UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

Del Shea Perry,                                    Case Number.: 19-cv-02580 (KMM-LIB)

          Plaintiff,

v.

Beltrami County, et al.,

          Defendants.

---

**REPLY MEMORANDUM IN SUPPORT OF THE MEND DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT**

---

Plaintiff opposes the present motion by alleging the care provided by MEnD Defendants was so deficient it amounts to deliberate indifference. In doing so, Plaintiff resorts to mischaracterizing the record, seemingly because her argument is unsupported by the *undisputed material facts*. Regardless, the record is clear: although Plaintiff disagrees with the care provided, a disagreement as to medical care provided does not arise to a constitutional deprivation.   First, MEnD Defendants were concerned that Sherrell had a potential serious medical need, so they sent him to the hospital on August 31. Second, after Sherrell returned from the hospital, with two extensive work-ups and no findings or diagnosis of a serious medical need, it was appropriate for MEnD Defendants to rely on this information and thus have no subjective awareness of a serious medical need. Further, MEnD defendants assessed, evaluated, and discussed Sherrell's condition to arrive at conclusions as to his condition after return to the jail. Plaintiff disagrees with the propriety of those evaluations, but that

disagreement sounds in medical negligence—not claims that arise to the level of deliberate indifference to a serious medical need.

When all of the extraneous argument is gutted and the facts of Sherrell's presenting symptoms and care are reviewed, it becomes clear that partial summary judgment is appropriate.

## ARGUMENT

### I.   Plaintiff's Recounting of the Facts Grossly Mischaracterizes MEnD Defendant's Knowledge of Sherrell's Condition and the Care Provided.

On a motion for summary judgment, "facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts."*Ricci v. DeStefano*, 557 U.S. 557, 586 (2009); *see Celotex v. Catrett,* 477 U.S. 317, 324 (1986) (the nonmoving party bears the burden of production under Rule 56 to "designate specific facts showing that there is a genuine issue for trial").

Plaintiff confuses the issues at hand by mischaracterizing the record. Throughout Plaintiff's memorandum, she misstates testimony and records and selectively chooses excerpts that further her version of the knowledge MEnD Defendants possessed, the care provided to Sherrell, and the rationale for the provided cares. Irrespective of Plaintiff's attempt, as set forth by Plaintiff herself, the undisputed material facts are:

1. On August 27, Pederson saw Sherrell. (ECF-30,¶19).Sherrell complained of headaches and left-sided chest pain. Pederson took his vitals and ordered an EKG. Pederson spoke with Dr. Leonard who prescribed medication and ordered Sherrell's monitoring.

2. On August 28, Pederson saw Sherrell. (ECF-30,¶21). Sherrell complained of back pain and arm weakness. Pederson spoke to Dr. Leonard who prescribed Sherrell medication and ordered movement to a lower bunk.

3. Sherrell submitted a kite asking to be taken to the hospital reasoning that he was unable to feel his legs and was physically immobile. (ECF-30,¶23).

4. On August 29, after a CO notified Pederson of Sherrell's complaints, she ordered his movement to an administrative segregation cell for further evaluation. (ECF-30,¶24).

5. Sherrell was seen by a MEnD nurse. (ECF-30,¶26). The nurse spoke to Leonard who ordered that Sherrell use a walker and an activity watch by BCJ.

6. On August 30, Sherrell was seen by Pederson. (ECF-30,¶33). Pederson examined Sherrell and found his symptoms concerning, so she contacted Leonard who ordered Sherrell's transportation to the ER. Allen overrode this order. Pederson informed Leonard and Sherrell of Allen's decision. (ECF-30,¶¶34-35).

7. On August 31, CNP Lundblad saw Sherrell. (ECF-30,¶36). Lundblad observed facial drooping, slight slurring of speech, right hand and right-sided muscle weakness, and diaphoresis. She ordered Sherrell's transportation to the ER.

8. Sherrell was transported to Sanford Bemidji and examined by Dr. Khalsa. (ECF-30,¶37). Khalsa ordered extensive testing. To rule out various diagnoses with MRIs, Sherrell was transported to Sanford Fargo.

9. At Fargo, Dr. Leigh examined Sherrell. (ECF-30,¶38). Sherrell underwent MRI scans. Leigh spoke with a CO informed him Sherrell was seen moving his extremities without

difficulty. Leigh diagnosed Sherrell with malingering and weakness and discharged Sherrell to BCJ with discharge instructions. (ECF-30,¶39).

10. On September 1,Sherrell arrived to BCJ. (ECF-30,¶40).

11. Nurse Skroch reviewed Sherrell's records. (ECF-30,¶43). Skroch assessed Sherrell. (ECF-90,25). Skroch spoke to Leonard about her findings and he ordered that Sherrell be seen for a neurology consult. (ECF-90,33-34).

12. On September 2, Skroch saw Sherrell. (ECF-30,¶48). Skroch made various observations of Sherrell. Skroch notified Leonard of her observations.

13. Around 1640, COs entered Sherrell's cell, observed that Sherrell was unresponsive, and contacted Health Tech Brewster. (ECF-30,¶53). Resuscitation efforts commenced, aided by EMS, but those efforts ultimately ended. Sherrell was pronounced dead. (ECF-30,¶54).

14. An independent autopsy was performed and the pathologist opined that Sherrell died from GBS. (ECF-30,¶55). This was not part of the initial ME report and was the first time Sherrell was diagnosed with GBS.

## II.   Plaintiff's Deliberate Indifference Claim Fails Because Plaintiff Cannot Show The MEnD Defendants Had Knowledge Of A Serious Medical Need.

"[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party, will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322. Plaintiffs' case rests on the ability to prove deliberate indifference. Without a constitutional violation, Plaintiff's claims for *Monell* liability fail.

After reviewing all evidence with the benefit of hindsight, MEnD Defendants do not dispute that Sherrell was experiencing a serious medical need. Regardless of this retrospective understanding, the record establishes that MEnD Defendants did not have subjective knowledge of and did not deliberately disregard such need. As acknowledged by Plaintiff, "[d]eliberate indifference must be measured by the official's knowledge at the time in question, not by "hindsight's perfect vision."(ECF-90,23). Prior to Sherrell's two hospital visits, the record reflects that Pederson and Leonard were concerned by Sherrell's symptoms. (ECF-90,6). As a result, Leonard ordered Sherrell's transportation to the hospital. Their concern was further evidenced by Sherrell's ER transportation the following morning.

But the undisputed record reflects that Skroch and Leonard did not have subjective knowledge of a serious medical need <u>after</u> Sherrell returned from two hospitals where it was determined, after evaluations and diagnostic testing, that there was not a serious medical need. Plaintiff does not dispute that they reviewed Sherrell's Sanford medical records. (ECF-90,34). Oddly, Plaintiff argues this reliance was somehow unwarranted.

It is undisputed that Khalsa diagnosed Sherrell with weakness. (Ex-11,2). In recounting Sherrell's examination, Plaintiff discusses Khalsa's findings but omits the extensive work-up. (ECF-90,13). Importantly, the record shows that while at Sanford Bemidji:

- Sherrell had *four* CT scans which were all benign.(*Id.,4*,7-10).

- Khalsa ordered laboratory tests including a comprehensive metabolic panel and complete blood count with differential.(*Id.,*4,39-40).

- Sherrell's vitals were monitored, taken 25 times.(*Id.,*54-55).

As a result of the extensive work up, Khalsa diagnosed Sherrell with weakness and considered potential causes but sent Sherell to Fargo for four MRI's to rule out cord compression and CVA.(*Id.,*2-4).

It is undisputed that Sherell was transferred to Fargo and was seen by Leigh who diagnosed him with malingering and weakness. (ECF-90,14). In recounting how Leigh reached those diagnoses, Plaintiff mischaracterizes the cited records. Plaintiff cites to Ex-11 at 69, a subjective report of symptoms *provided by the patient*, stating that Leigh found lower extremity weakness, upper extremity weakness, loss of sensation, and facial droop. (ECF-90,13-14). Leigh's objective findings, the physical examination portion of his note, are as follows:

- Normal oropharynx

- Pupils reactive and equal

- Normal range of neck motion, no tenderness

- No respiratory difficulty

- No sensory deficit

- Normal muscle tone

- Negative Babinski reflexes

- Normal bilateral patellar reflexes

- Withdrawing from stimulus

(Ex-11,70). In arguing that Leigh's diagnosis was the result of a CO's report, Plaintiff omitted Leigh's objective findings used to support his diagnoses. (ECF-90,14-16). Additionally, Plaintiff attempts to downplay the extensive scans completed alleging only *one* MRI was

completed; there were *four* negative MRIs. (ECF-90,14;Ex-11,92-95). Finally, Plaintiff omitted the extensive monitoring of both Sherrell's condition and his vitals.(Ex-11,120).

Skroch and Leonard indisputably reviewed the aforementioned records. The suggestion that they should have had concluded, regardless of the extensive evaluation and diagnostic testing done at the ER, that Sherrell had a serious medical need, is baffling.[1]

### III.   Plaintiff's Deliberate Indifference Claim Fails Because Plaintiff Cannot Show MEnD Defendants Provided Deficient Care.

Plaintiff admits that MEnD provided medical care to Sherrell yet argues that this care was so deficient as to amount to deliberate indifference. (ECF-90,73). But Plaintiff must present evidence showing that the medical care provided was "so inappropriate" that it demonstrates "intentional mistreatment." *Jolly v. Knudsen*, 205 F. 3d 1094, 1097 (8th Cir. 2000).

Here, the facts Plaintiff acknowledges may go to her claims of medical negligence but do not arise to care so insufficient that they amount to a constitutional violation. To wit: Pederson examined Sherrell, Pederson found his symptoms concerning, Pederson and Leonard discussed Sherrell's symptoms, Leonard ordered Sherrell's transportation to the hospital, Pederson informed Allen of the order which Allen overrode, Pederson attempted to convince Allen otherwise (to no avail), Leonard found it appropriate to wait until the following morning for a provider to examine Sherrell, Sherrell was examined the following morning by Lundblad, and then transported to the ER. Plaintiff disagrees with the evaluations and sequence of events, but disagreement is insufficient to establish intentional mistreatment.

---

[1] ECF-84,2-18.

While acknowledging  that Skroch and Leonard provided care to Sherrell Plaintiff nonetheless characterizes this care as so deficient as to amount to deliberate indifference. (ECF-90,75-76). In support of her argument, she cites:"if a plaintiff presents evidence of very obvious and blatant circumstances indicating that the defendant knew the risk existed, the jury may properly infer that the official must have known."(ECF-90,73). As noted, the record is clear that Skroch and Leonard relied on comprehensive evaluations and diagnostic testing of Sherrell at two different hospitals and the diagnoses of malingering and weakness. Plaintiff admits that Leonard ordered Sherrell's ER transport because he "needed a further evaluation with means beyond what we have in the facility."(ECF-90,10, citing to Ex-4, 183). How can this be construed as "intentional mistreatment?" Then, when Sherrell was ultimately transported to *two* hospitals where two evaluations were completed, Plaintiff blames Skroch and Leonard for relying on those evaluations. Circumstantial evidence cannot be used a doubled-edged sword.

Plaintiff also argues that Sherrell's condition should have prompted Skroch and Leonard to return Sherrell to the hospital. (ECF-90,75-76). But Plaintiff ignores the law:  an inmate cannot show deliberate indifference based on a provider's failure to act more quickly when their subjective complaints often do not mirror the objective testing of those complaints. *Tenerelli v. U.S.*, 2020 WL 5816760, at *8 (D. Minn. Sept. 30, 2020). Skroch and Leonard were aware that Dr.Khalsi and Leigh noted upper extremity and lower extremity weakness, facial droop, and loss of sensation. But they were also aware that Sherrell's subjective complaints and appearance did not mirror the physicians' objective testing of those symptoms (derived from extensive scans, labs, monitoring, and physical examinations); thus Leigh's diagnosis of

malingering. After Sherrell returned, his subjective complaints remained the same, and did not correlate with Skroch's objective findings. For example, Sherrell complained he was choking, but Skroch did not observe any signs of choking such as "guarding, grimacing, having shortness of breath, having agonal breathing."(Ex-305,63:21-64:18).

Further, Leonard ordered a follow-up neurology consult to occur after the weekend, despite the appearance that Sherrell's condition was improving—just not as quickly as Plaintiff says should have occurred. Plaintiff bases this contention on Sherrell's subjective complaints that did not mirror objective findings. The record refutes Plaintiff's claims of deliberate indifference and they thus fail under the law.[2]

## IV.   Plaintiff's Monell Claim Fails For Lack Of A Constitutional Violation.

The Eighth Circuit "has consistently recognized a general rule that, in order for municipal liability to attach, individual liability first must be found on an underlying substantive claim." *Brockinton v. Sherwood,* 503 F.3d 667, 674 (8th Cir. 2007). None of the MEnD Defendants' conduct was deliberately indifferent, so there is no underlying constitutional violation to support *Monell* liability against MEnD.

Plaintiff unsurprisingly recounts superfluous facts to support her *Monell* argument. Plaintiff's emphasis on Leonard's romantic relationships, which are inarguably irrelevant to this claim, shows Plaintiff's attempt to confuse the issues and inability to show a dispute as to the material facts. (ECF-90,87).

Second, common sense establishes that MEnD's adoption of "Detainee Medical Care" policy was not deliberately indifferent. The Policy provides "[a]nytime a detainee is referred to

---

[2] MEnD Defendants expert, Dr. Stolz, rebuts Plaintiff's cited expert opinions. *See* Ex. L.

the Emergency Department, or other outside medical specialty, medical staff will visit with that detainee on the next clinic day, or sooner where indicated." Plaintiff argues this policy's adoption was deliberately indifferent because it does not require medical staff to assess the discharged inmate's vitals or to create a treatment plan. (ECF-90,88-89). Yet, by discharging an inmate from the hospital, the attending physician has medically cleared the individual, an explicit indication that the inmate no longer requires a higher level of care. Therefore, Plaintiff's argument is against common sense. MEnD Defendants cannot be blamed for a hospital's decision to discharge a patient if a higher level of care is still required, especially if those concerns are not communicated to MEnD.

Plaintiff argues that MEnD Defendants maintained an unconstitutional custom and training regimen of withholding discharge instructions from correctional staff. (ECF-90,106). In support of her argument, she mischaracterizes MEnD Defendants testimony: "Skroch, Pederson, and Leonard likewise testified that MEnD nurses are not trained to relay ER discharge instructions to correctional staff and, in this case, Skroch did not even read them herself."(ECF-90,89-91,107). To the contrary, the record establishes that MEnD trained its staff to communicate relevant information contained in the discharge instructions, without disclosing the inmate's diagnosis, to correctional staff. (Ex-4,281:1-281:14;Ex-302,70:25-72:18;Ex-305,172:8-173:25). Plaintiff might disagree with the method, but the fact  they did not physically hand those instructions to correctional staff does not arise to an unconstitutional custom or policy.

## CONCLUSION

Partial Summary Judgment in favor of the MEnD Defendants is appropriate.

Date:  July 11, 2022            **LARSON · KING, LLP**

By */s/ Anthony J. Novak*
Anthony J. Novak (0351106)
Carolin J. Nearing (0291791)
Taylor McKenney (0400905)
2800 Wells Fargo Place
30 E. Seventh Street
St. Paul, MN  55101
Tel:  (651) 312-6500

tnovak@larsonking.com
cnearing@larsonking.com
tmckenney@larsonking.com

**Attorneys for the MEnD Defendants**